UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ROBERT R. DOGGART, | ) | |
| --- | --- | --- |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-34 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Judge Curtis L. Collier |
| *Respondent*. | ) | |

## M E M O R A N D U M

Before the Court is Petitioner's motion to vacate his sentence under 28 U.S.C. § 2255. (Doc. 1.) The United States (the "Government") has responded in opposition, (Doc. 15), and Petitioner replied (Doc. 18). Petitioner then moved to amend his reply brief. (Doc. 25.)

Petitioner has also filed multiple motions for immediate release pending appeal. (Docs. 4, 27, 31, 35). In addition, Petitioner has filed a motion to appoint counsel to assist him with his pending motion (Doc. 20) and motions for an evidentiary hearing (Docs. 19, 36). He has filed motions to subpoena witnesses to the evidentiary hearing. (Doc. 23, 28.)

The Court will **GRANT** Petitioner's motion to amend his reply brief (Doc. 25) and consider the revisions when resolving his Section 2255 petition. The Court will **DENY** Petitioner's motion for appointment of counsel (Doc. 20) and **DENY** Petitioner's motions for a hearing (Doc. 19, 36). The Court will **DENY** Petitioner's motions to subpoena witnesses to the hearing. (Docs. 23, 28.) The Court will **DENY** Petitioner's Section 2255 motion (Doc. 1) and **DENY AS MOOT** Petitioner's various motions for immediate release pending appeal (Docs. 4, 27, 31, 35).

## I. BACKGROUND

### A. Offense Conduct and Criminal Proceeding

In 2016, Petitioner pleaded not guilty to soliciting the destruction of a mosque, soliciting arson, and two counts of making threats to kill, injure, and intimidate persons and destroy property by means of fire and an explosive after soliciting others to plan an attack against a small Muslim community known as Islamberg. (Case No. 1:15-cr-39, Docs. 84, 92.) At trial, Defendant argued that the Government entrapped him and that he never developed an actual plan to attack Islamberg. (Case No. 1:15-cr-39, Doc. 289 at 178–95.) After considering the evidence, the jury found Petitioner guilty on all four charges. (Case No. 1:15-cr-39, Doc. 179.) Petitioner filed a motion for acquittal (Case No. 1:15-cr-39, Doc. 185), and the Court granted it only as to the two threat charges. (Case No. 1:15-cr-39, Doc. 230.) The Court sentenced Petitioner to a guidelines sentence of 235 months on the two remaining charges. (Case No. 1:15-cr-39, Doc. 249.)

Petitioner timely appealed his sentence to the Court of Appeals for the Sixth Circuit. (Case No. 1:15-cr-39, Doc. 274). The Court of Appeals for the Sixth Circuit reversed Petitioner's conviction for soliciting arson, remanding for resentencing on Petitioner's remaining conviction of soliciting the destruction of a mosque. (Case No. 1:15-cr-39, Doc. 323 at 16.) On remand, the Court sentenced Petitioner to 120 months in prison. (Case No. 1:15-cr-39, Doc. 351.) Petitioner appealed the judgment (Case No. 1:15-cr-39, Doc. 354), and the Court of Appeals affirmed, finding Petitioner's sentence to be substantively reasonable. (Case No. 1:15-cr-39, Doc. 361 at 12.) Petitioner timely filed a motion pursuant to 28 U.S.C. § 2255 to request that his sentence be vacated and that he be resentenced. (Case No. 1:22-cv-34, Doc. 1.)

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence when the sentence imposed was in violation of the Constitution or federal law, the court was without jurisdiction to impose such a sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack.  To prevail on a Section 2255 motion, the petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185–86 (1979)).  Thus, "a petitioner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). This is in line with the historic meaning of habeas corpus, which is "to afford relief to those whom society has 'grievously wronged.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief."  *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 4(b).  If the motion is not summarily dismissed, Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the district court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  *See* Rules Governing Section 2255 Proceedings in United States District Courts Rule 8(a).

## II. DISCUSSION

The Court conducted an initial review of Petitioner's Section 2255 motion and determined from its face that it should not be summarily dismissed. (Doc. 9 at 1.) The Court will first address whether an evidentiary hearing is required. The Court will then resolve Petitioner's pending motions, including his Section 2255 motion.

### A. Motion for Evidentiary Hearing

Before the Court are motions by Petitioner for an evidentiary hearing on his Section 2255 motion (Docs. 4, 19, 36).[1] A petitioner's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a legitimate factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

An evidentiary hearing is not required, however, if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted)). Nor does a petitioner's assertion of innocence, without more, entitle him to a hearing. *Martin*, 889 F.3d at 832. If Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact," a motion for

---

[1] Petitioner represents that he also "intends to submit an additional document per Local Rules for a complaint of Professional Misconduct against his trial attorneys" at the hearing. (Doc. 36.) An evidentiary hearing concerning Petitioner's Section 2255 petition is not the place to make a complaint of professional misconduct against one's trial attorneys.

an evidentiary hearing is denied. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

Petitioner's assertion of innocence, without more, does not entitle him to a hearing. *See Martin*, 889 F.3d at 832. As discussed below, no hearing is required because the record conclusively establishes that Defendant is not entitled to relief. Petitioner's motions for an evidentiary hearing (Docs. 4, 19, 36) will be **DENIED**. The motions to subpoena additional witnesses to an evidentiary hearing will also be **DENIED**. (Docs. 23, 28.)

### B.  Motion to Appoint Counsel

Before the Court is a motion to appoint counsel to assist Petitioner with his Section 2255 motion. (Doc. 20.) Petitioner requests the assistance of counsel because he is unable to pay an attorney and lacks the means to prepare court filings. (*Id*. at 1.)

The constitutional right to counsel in criminal prosecutions does not apply to habeas corpus cases. *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964). This means there is no right to counsel in postconviction proceedings, including Section 2255 proceedings. *See Garza v. Idaho*, 586 U.S. 232, 246 (2019); *United States v. Augustin*, 16 F.4th 227, 233 (2021). Rather, the decision to appoint counsel for a federal habeas petitioner generally is within the discretion of the Court. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986).

Here, the interests of justice or due process do not require the Court to appoint counsel. *See* 18 U.S.C. § 3006A(a)(2). The reasons Petitioner expresses for needing counsel, such as a lack of legal training and limited access to resources, are grounds he shares in common with all other habeas petitioners. Because there is no right to counsel for postconviction relief and the appointment of counsel is not otherwise appropriate, Petitioner's motion for appointment of counsel (Doc. 20) will be **DENIED**.

5

### C. Motion to Amend Petitioner's Reply

As a preliminary matter, Petitioner moves to amend his reply brief, filed on April 13, 2023, because the "new information will fundamentally change how this Case is viewed." (Doc. 25 at 1.) His proposed amended pleading, filed on July 13, 2023, edits the background statement of his reply brief, lists four additional topics Petitioner contends his counsel should have addressed at trial, and attaches the CM/ECF record of the parties in his criminal case. (Doc. 26 at 1–2.) The Government has not responded to Petitioner's motion.

Because Petitioner's motion to amend falls outside of the twenty-one-day period in which he may amend his reply as a matter of course, he may amend his reply only with the Government's written consent or leave of court, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(1). "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

After reviewing Petitioner's proposed amendments (Doc. 26), the Court finds that the Government would not be prejudiced by granting Petitioner's motion. His proposed amendments are simply reformulations of the factual assertions in his reply or minor factual additions. Therefore, the Court will **GRANT** Petitioner's motion to amend his reply brief (Doc. 25) and consider the revisions when resolving his Section 2255 petition.

### D. Petitioner's Section 2255 Petition

In support of his Section 2255 petition, Petitioner raises two grounds for relief. First, he contends the Government intimidated his daughter, Hillary Doggart-Greer, into not testifying during his trial, which affected the ultimate guilty verdict because she would have provided "positive and exculpatory information" about his personal nature. (Doc. 1 at 5.) Second, he

alleges ineffective assistance of counsel because of his counsel's courtroom performance, his counsel's alleged disregard of his "trial topics" list, his counsel's failure to call Shane Schielein and William Tint as witnesses, legally incorrect jury instructions, and his counsel's failure to present a plan he drew during July 2015. (*Id.* at 7.) The Court will address each argument in turn.

### 1. Ground One: Intimidation of Hillary Doggart-Greer

Petitioner argues the Government committed prosecutorial misconduct during his trial when it intimidated a "key Witness," Hillary Doggart-Greer, into not testifying, which he contends "depriv[ed] the Jury of the opportunity to determine the nature of the Defendant, in depth." (Doc. 1 at 5.) Petitioner acknowledges that he did not raise this on direct appeal, stating he "relied on the advice and work products of his attorneys prior to, during, and following the Trial, and it was his first experience with the criminal justice system." (*Id.*) He claims he would have terminated his attorney representation or interrupted the trial so he could inform the Court and the jury of the Government's "intimidation" of Doggart-Greer. (*Id.*)

In response, the Government asserts Petitioner procedurally defaulted this claim. (Doc. 15 at 7.) Petitioner did not raise this issue at the district court at all, including during trial and during his sentencing and resentencing hearings. (*Id.* at 8.) Furthermore, Petitioner did not raise this claim during his three direct appeals. (*Id.*)

When a defendant fails to raise his claim before the district court or on direct appeal, the claim is procedurally defaulted and cannot be raised in a Section 2255 proceeding unless he can show cause and actual prejudice regarding that default or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). Excusing procedural default because of cause and prejudice requires the defendant to meet an "intentionally high" bar

7

because collateral attack cannot substitute for a direct appeal. *Peveler v. United States*, 269 F.3d 693, 700 (6th Cir. 2001) (quoting *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000)). "To establish actual innocence, petitioner must demonstrate that, '"in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him'" absent the constitutional error. *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)).

Here, Petitioner brings his claim about Doggart-Greer for the first time in his Section 2255 petition. He did not raise this argument at trial or his sentencing and resentencing hearings. (*See generally* Case No. 1:15-cr-39, Docs. 283, 285, 286, 287, 288, 290, 291, 292, 313, 357.) Nor did he raise this argument during his three appeals to the Court of Appeals for the Sixth Circuit. (*See generally* Case No. 20-6128, Docs. 20, 29; Case No. 17-5813, Docs. 37, 48, 60, 66, 73.) Because he has neither presented this claim to the district court nor on direct appeal, he cannot bring it now.

Petitioner has not shown cause and prejudice to excuse this procedural default. "[C]ause exists if a claim 'is so novel that his legal basis [was] not reasonably available to counsel' during the original proceedings." *Mitchell v. United States*, 43 F.4th 608, 615 (6th Cir. 2022) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Here, Petitioner merely explains "he was not self-assured in challenging" his counsel and his trial "was his first experience with the criminal justice system." (Doc. 1 at 5.) That explanation does not come close to providing cause for why he did not raise this claim prior to his Section 2255 petition.

In addition, Petitioner has failed to show actual prejudice caused by the alleged prosecutorial intimidation of Doggart-Greer. Petitioner submits Doggart-Greer would have testified about "his education, experiences, public and private achievements, and background of

8

thorough compliance with the Laws of the United States of America." (*Id.*) But all that testimony had already been presented through the testimony of Petitioner's eldest daughter, Christie Smith Doggart Atkins, and her husband, Randy Atkins. (No. 1:15-cr-39, Doc. 289 at 124, 138.)

Christie Atkins testified how she had named her oldest son after Petitioner to honor him, that Petitioner had served as the volunteer president of the American Society of Nondestructive Testers and volunteered over eight thousand hours, and that she felt he is a "peaceful person" who spent time with his grandchildren. (*Id.* at 125, 128–29, 130–31, 134.) She described how he had responded to a house fire to make sure a child was safe and he had donated over twenty-two gallons of blood. (*Id.* at 130–31.) Randy Atkins testified, "I know [Petitioner] is one of the top people in the nondestructive testing field of radiography. And I've heard that he has written several manuals for radiation safety." (*Id.* at 140.) He also testified Petitioner was a peaceful person around him and his children. (*Id.* at 142.) All of the content Petitioner contends Doggart-Greer would have testified to was thus already covered, in detail, by Christie and Randy Atkins. "[I]t is simply implausible that additional generic testimony . . . would have tipped the scales in the other direction." *United States v. Munoz*, 605 F.3d 359, 379 (6th Cir. 2010) (citing *United States v. Colomb*, 419 F.3d 292, 301 (5th Cir. 2005)). In sum, Petitioner failed to demonstrate cause and prejudice excusing his procedural default.

Petitioner also did not argue that he is actually innocent. Instead, he merely contends that Doggart-Greer's testimony would have altered the jury's opinion of him and he deserved a mistrial because of the alleged prosecutorial misconduct. (Doc. 1 at 5.) Accordingly, his procedural default cannot be excused on the basis of actual innocence. *See Bousley*, 523 U.S. at 622. In conclusion, Petitioner's claim that the Government intimidated Doggart-Greer into not

9

testifying at his trial is procedurally defaulted and Petitioner has not shown an excuse for the procedural default.

## 2. Ground Two: Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel because of his counsel's courtroom performance, his counsel's alleged disregard of his "trial topics" list, his counsel's failure to call Shane Schielein and William Tint as witnesses, legally incorrect jury instructions, and his counsel's failure to present a plan he drew during July 2015. (*Id.* at 7.)

The Sixth Amendment provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Petitioner bears the burden of showing ineffective assistance of counsel. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance

10

must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Sims v. Livesay*, 970 F.2d 1575, 1579–80 (6th Cir. 1992) ("The court should begin with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (internal quotations and citations omitted)). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The Supreme Court emphasized a claimant must establish both prongs in order to meet his burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

### A. Deficient Performance

Petitioner alleges that his lawyer's performance was deficient for five reasons.

### i. Counsel's Courtroom Performance

Petitioner first argues that counsel's courtroom performance constitutes deficient performance. (Doc. 1 at 7.) Petitioner argues that throughout trial,

> Defense Counsel did not interrogate Prosecution Witnesses vigorously and in detail, where many opportunities existed to permit the Jury to have the intelligences [sic] to more thoroughly comprehend the charges against the Defendant. The Defendant attributes this to insufficient knowledge of the issues of the Case resulting from substandard preparation. The volume and tone of the Defense Counsel's statements and inquiries in Court were weak and passive and made in a manner not suggesting confidence. There was an absence of depth and breadth, and intricacy. The rebuttals, if they can be defined as that, were passive at most.

(*Id*.) Petitioner asserts that "[c]ounsel lacked the courage, maturity, and fund of knowledge to provide qualified legal advice and perform in court at the expected professional level." (*Id*.)

The Supreme Court has made clear that counsel need not be perfect. *Harrington*, 562 U.S. at 110. "[T]here is no expectation that competent counsel will be a flawless strategist or tactician." *Id*. Instead, counsel must be "reasonably competent." *Id*. Petitioner bears the burden to show that "counsel's representation was not merely below average, but rather that it fell below an objective standard of reasonableness." *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014).

Here, beyond mere assertions, there is no indication that counsel's overall performance lacked active and capable advocacy. *See Harrington*, 562 U.S. at 111. Petitioner argues that counsel did not interrogate prosecution witnesses vigorously and in detail. (Doc. 1 at 7.) However, "'deciding what questions to ask a prosecution witness on cross-examination is a matter of strategy,' and counsel is not required to explore every inconsistency to avoid being labeled ineffective." *Franklin v. United States*, No. 3:10-CR-00055, 2023 WL 2466355, at *6 (M.D. Tenn. Mar. 10, 2023) (citations omitted). Petitioner faults his counsel's courtroom

12

demeanor but fails to identify further specific acts or omissions of counsel. *See Strickland*, 466 U.S. at 690. Petitioner's counsel's conduct did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

### ii. Petitioner's Trial Topics List

Next, Petitioner argues that defense counsel ignored a list of trial topics provided by Petitioner. (Doc. 1 at 7.) However, "[a] trial counsel's tactical decisions are particularly difficult to attack, meaning that a defendant attacking his lawyer's performance must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Tackett v. Trierweiler*, 956 F.3d 358, 374 (6th Cir. 2020) (citation omitted). Deciding what topics to address at trial is at the very core of trial strategy, and, "[i]n reviewing a claim of ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy." *Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007). Petitioner has shown no entitlement to relief on his claim that counsel was ineffective in choosing his own list of trial topics as part of his trial strategy.

### iii. Shane Schielein and William Tint

Petitioner argues his counsel was ineffective for failing to call critical witnesses. (Doc. 1 at 7.) Petitioner suggests that because the witnesses did not testify for the Government, they would have testified in his favor. (*Id.*) In response, the Government explains that "the fact that the United States elected not to call Tint or Schielein as witnesses does not mean those individuals would have testified in [Petitioner's] favor if he had called them." (Doc. 15 at 12.)

The decision of "whether to call a witness" and "how to conduct a witness's testimony are classic questions of trial strategy." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). This is especially true if the witness is likely to be impeached if they testify. *U.S. v.*

13

*Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). "Tough judgment calls about what to challenge and what to let slide are part of lawyering. Such decisions only become deficient—that is, incompetent—when no reasonable counsel would have made the same choice at the time." *Moody*, 958 F.3d at 492 (citing *Strickland*, 466 U.S. at 690).

Here, there is no guarantee the witnesses would have testified in Petitioner's favor. Yet even if they had been willing to testify in Petitioner's favor, it is extremely unlikely their testimony was so strong that every defense attorney would have called them. *See id.* This is especially true because the witnesses were likely to be impeached with audio recordings of their conversations with Petitioner. *See Pierce,* 62 F.3d at 833. Schielein could have been impeached with his suggestion to poison the residents of Islamberg (Doc. No. 1:15-cr-39, Doc. 302-8 at 42), and Tint could have been impeached with his offer to provide a "demolition guy" to destroy Islamberg's mosque. (No. 1:15-cr-39, Doc. 302-1 at 10.) Furthermore, calling these witnesses was likely incompatible to the defense counsel's strategy. The audio recordings suggest that Petitioner and the witnesses had a plan and timeline to attack Islamberg, thus undermining both the entrapment and lack-of-planning defense theories. It was reasonable for defense counsel not to call potentially unbelievable witnesses that could have hurt the defense. The Court declines to second-guess counsel's trial strategy to not call these witnesses. *See Samatar*, 225 F. App'x at 372.

### iv. Jury Instructions

Petitioner argues his counsel failed to accurately present the legal elements of solicitation in the jury instructions. (Doc. 1 at 10.) In support of his argument, he provides the Black's Law Dictionary definitions of "solicitation," "command," "threat," "intent," "specific intent," and "criminal intent." (*Id.*) Petitioner admits that his "perspective is not specifically delineated in

14

Law," but argues it is "a logical approach to solve the dilemma of whether a solicitation occurred." (*Id.*)

The Government responds that Petitioner's proposed instructions do not accurately recite the law. "[Petitioner] asserts that "[w]ithout an actual, physical Crime, there can be no solicitation preceding it . . . [Petitioner] is mistaken. Solicitation is "'[t]he inchoate offense of asking someone to engage in illegal conduct.' (Doc. 15 at 15-16 (quoting *United States v. Butler*, 207 F.3d 839, 848 (6th Cir. 2000)).) The Government is correct. It was reasonable for defense counsel not to submit jury instructions that inaccurately explain the law. *See Strickland*, 466 U.S. at 688.

### v. Petitioner's July 2015 Plan

Petitioner's final assertion of ineffective assistance of counsel is that counsel failed to show the jury the plan that he drew up in July 2015 that lacked "assigned names, due dates, and a subordinate plan for training." (*Id.* at 11.) Furthermore, he claims he was not a trained marksman because he had not used a weapon during the fourteen months leading up to his arrest. (*Id.*)

"Counsel's performance is not deficient when counsel fails to use evidence that "would be of little help" to the defendant." *Moreland v. Robinson*, 813 F.3d 315, 329 (6th Cir. 2016) (quoting *Strickland*, 466 U.S. at 699). Presenting Petitioner's July 2015 Plan would have been of little help to Defendant and would have drawn the jury's attention to facts that do not help the defense. *See id.* Counsel could have reasonably concluded that introducing this plan would lead the jury to focus on Petitioner's ability to plan an attack. *See id.* The Court again declines to second-guess counsel's trial strategy not to introduce this evidence. *See Samatar*, 225 F. App'x at 372.

B.  **Prejudice**

As explained above, none of Petitioner's allegations establish that counsel's performance was deficient, meaning Petitioner fails to meet the burden for ineffective counsel. Moreover, Petitioner cannot establish prejudice. "Whether a petitioner can show prejudice depends in large part on the evidence in the case." *Storey v. Vasbinder*, 657 F.3d 372, 374 (6th Cir. 2011). In this case, the collective evidence against Petitioner was not weakly supported. *See Strickland*, 466 U.S. at 696. Rather, the evidence was overwhelming and showed beyond a reasonable doubt that Petitioner solicited others to burn down the mosque in Islamberg. (*See* Doc. 230 at 3–6.) Petitioner fails to show a reasonable probability that the jury would not have convicted him absent his attorney's allegedly deficient performance. *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Accordingly, Petitioner's Section 2255 motion (Doc. 1) will be **DENIED**.

Petitioner also filed various motions for immediate release pending appeal pursuant to 18 U.S.C. § 3143. (Docs. 4, 27, 31, 35.) Title 18, U.S.C. § 3143 applies to direct appeals and not to collateral attacks such as Section 2255 proceedings. *Fonseca v. United States*, 129 F. Supp. 2d 1096, 1098 (E.D. Mich. 2001). The Court finds Petitioner is not entitled to relief under this statute. Nevertheless, the motions (Docs. 4, 27, 31, 35) will be **DENIED AS MOOT** since the Section 2255 motion is no longer pending.

IV. **CONCLUSION**

For the foregoing reasons, The Court will **GRANT** Petitioner's motion to amend his reply brief (Doc. 25) and consider the revisions when resolving his Section 2255 petition. The Court will **DENY** Petitioner's motion for appointment of counsel (Doc. 20) and **DENY** Petitioner's motions for a hearing (Doc. 19, 36). The Court will **DENY** Petitioner's

16

Section 2255 motion (Doc. 1) and **DENY AS MOOT** Petitioner's various motions for immediate release pending appeal (Docs 4, 27, 31, 35).

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists could not conclude that Petitioner's claims deserve further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the Court's finding that Petitioner is not entitled to relief under Section 2255. Accordingly, a COA will not issue. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001).

    **AN APPROPRIATE ORDER WILL ENTER.**

/s/  
**CURTIS L. COLLIER**  
**UNITED STATES DISTRICT JUDGE**

17